**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                    )
**WASHINGTON TENNIS & EDUCATION**   )
**FOUNDATION, INC.,**               )
                                    )
    **Plaintiff,**          )
                                    )
    **v.**                  )    **Case No. 15-cv-02254 (APM)**
                                    )
**CLARK NEXSEN, INC., et al.,**     )
                                    )
    **Defendants.**          )
_____ )

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This lawsuit arises out of a contract between Plaintiff Washington Tennis & Education Foundation, Inc., and Defendant Clark Nexsen, Inc., in which Defendant agreed to design and oversee construction of a $10 million tennis and education facility in southeast Washington, D.C. ("Architect Agreement"). A little more than a year after entering into the Architect Agreement, Plaintiff assigned "all of [its] right, title and interest" in the agreement to a related but separate entity, Washington Tennis & Education Foundation East, Inc. ("WTEF East"), which is not a party to this suit. After discovering various alleged design flaws in the facility, Plaintiff filed this action against Defendant, alleging breach of the Architect Agreement and violation of the common law duty of professional care. Defendant responded by filing a counterclaim for breach of contract.

Before the court are three related motions. The first is Defendant's Motion for Summary Judgment. Defendant seeks entry of judgment in its favor on a host of grounds, but its primary argument is that Plaintiff lacks standing to sue because Plaintiff assigned all contractual rights it possessed under the Architect Agreement to WTEF East. The second motion is Defendant's

Motion in Limine to Strike the Expert Reports and Opinion Testimony of Jeffrey Stoiber and John Farrell. The third motion before the court is Plaintiff's Motion to Add WTEF East as a Co-Plaintiff. Although Plaintiff insists that it has standing to pursue its claims, it nevertheless moves to add WTEF East as a co-plaintiff in order to preemptively cure any purported jurisdictional defect.

The court has considered the parties' pleadings and accompanying materials, and it agrees that Plaintiff lacks standing in light of its assignment of all of its contractual interests to WTEF East. Further, because the court lacks subject matter jurisdiction over Plaintiff's original claims, the court correspondingly lacks authority to add WTEF East as a party. Accordingly, the court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion to Add WTEF East as a Co-Plaintiff. Defendant's Motion in Limine is denied as moot.

## II. BACKGROUND

### A. Factual Background

Plaintiff Washington Tennis & Education Foundation, Inc., is a nonprofit organization operating in the District of Columbia that provides athletic and academic programs for children from low-income families in the region. Pl.'s Opp'n to Defs.' Mot. for Summ. J. & Mot. in Limine, ECF No. 50 [hereinafter Pl.'s Opp'n], at 1. In October 2010, Plaintiff entered into a contract ("Architect Agreement") with Defendant Clark Nexsen, Inc.,[1] an architecture and engineering firm, under which Defendant agreed to provide architectural design and construction oversight services for Plaintiff's new tennis and education campus in southeast Washington, D.C. ("East Capitol Campus"). Defs.' Ex. N, ECF No. 47 [hereinafter Architect Agreement], at 1–2, 6–7.

---

[1] Plaintiff also names as a defendant Clark Nexsen Owen Barbieri and Gibson, P.C. In 2014, Clark Nexsen Owen Barbieri and Gibson, P.C., changed its name to Clark Nexsen, Inc. *See* Defs.' Mot. for Summ. J., ECF No. 46, at 1. Accordingly, the court refers to one defendant, Clark Nexsen, throughout the opinion.

2

Plaintiff raised nearly $8 million to build the new facility. Pl.'s Opp'n, Pl.'s Stmt. of Material Facts in Dispute, ECF No. 50-1 [hereinafter Pl.'s Stmt.], ¶ 2.

In December 2011, Plaintiff formed a new entity, Washington Tennis & Education Foundation East, Inc. ("WTEF East"). Pl.'s Opp'n, Ex. 2, ECF No. 50-3 [hereinafter Pl.'s Ex. 2], at 2–3.[2] WTEF East was incorporated as a non-stock corporation under Delaware law, and established as a "supporting organization" under Internal Revenue Code Section 509(a)(3), for the purpose of supporting Plaintiff's charitable and educational purposes. *Id.* at 3, 5; 26 U.S.C. § 509(a)(3). Plaintiff is the sole member of WTEF East. Pl.'s Ex. 2 at 5. The formation of WTEF East enabled Plaintiff to obtain an additional $2 million in financing for the East Capitol Campus under the federal New Markets Tax Credit program, which provides federal tax credits to private investors who finance community development projects in low-income neighborhoods. Pl.'s Mot. to Add WTEF East as a Co-Plaintiff, ECF No. 49 [hereinafter Pl.'s Mot.], at 2 n.1; Defs.' Mot. for Summ. J., ECF No. 46 [hereinafter Defs.' Mot.], Ex. L, ECF No. 46-15 [hereinafter Defs.' Ex. L], at 2. WTEF East had to be created as a separate entity to secure the New Markets Tax Credits. Defs.' Mot., Ex. G, ECF No. 46-10 [hereinafter Grand Dep.], at 60–61.

In early 2012, due to the project's financing structure and the creation of WTEF East, the parties to the Architect Agreement changed. Plaintiff and WTEF East entered into an agreement, made effective December 30, 2011, in which Plaintiff assigned "all of [its] right, title and interest" in the Architect Agreement to WTEF East ("Assignment Agreement"). Defs.' Mot., Ex. O, ECF No. 46-18 [hereinafter Assignment Agreement]. The Architect Agreement, however, required Defendant's consent to the assignment. Architect Agreement at 16 (Art. 10, § 10.3). Thus, in a

---

[2] All pin citations to Plaintiff's Exhibit 2 reference the page number generated by ECF.

letter dated February 13, 2012, Plaintiff's President, Eleni Rossides, sought Defendant's consent to assign Plaintiff's rights to WTEF East and explained the need for the assignment as follows:

> In order to obtain financing for the project, [Plaintiff's] lender, Capital One ("Lender"), stipulated that [Plaintiff] transfer its leasehold interests to a new entity which is known as [WTEF East]. . . .
>
> Moving forward, all documents including, but not limited to[,] amendments, change orders and so forth, must be submitted to the Lender for approval. So that our team is not utilizing an entity name which is no longer applicable to this project and otherwise creating confusion with the Lender, [Plaintiff] would like to formalize an assignment of its interests under the [Architect] Agreement to [WTEF East].

Defs.' Mot., Ex. P, ECF No. 46-19 [hereinafter Defs.' Ex. P]; *see also* Defs.' Mot., Ex. Q, ECF No. 46-20 (E-mail from Maria Graziano to Adrian Lazaro, Feb. 13, 2012, with Defs.' Ex. P attached) (stating that "WTEF East Inc[.] is the entity created to fund and manage the new site [and] [t]hus, we will need to adjust the [Architect Agreement] with similar information"); Defs.' Mot., Ex. K, at 7. Defendant consented to the assignment and, consistent with the agreement's new structure, future amendments to the Architect Agreement identified WTEF East as the project's "Owner." *See* Assignment Agreement at 1, 3; Defs.' Mot., Ex. S, ECF No. 46-22.

### B. Procedural History

Numerous problems with the construction of the East Capitol Campus led to the instant suit. In November 2015, Plaintiff filed this action alleging various design defects in the East Capitol Campus that it believed were attributable to Defendant, including a defective HVAC system, a mis-located wall that left the building's foundation exposed, and buckling tile flooring. *See* Notice of Removal, ECF No. 1, Compl., ECF No. 1-3, ¶ 9. Plaintiff's Complaint advances two theories of liability. In Count I, WTEF alleges Defendant breached the Architect Agreement through errors and shortcomings in its design of the East Capitol Campus and its oversight of the

4

construction process. *Id.* ¶¶ 11–13. In Count II, WTEF alleges that Defendant violated its common law duty of professional care by failing to perform its work with the skill and care ordinarily provided by architects in this locality, and violated industry standards. *Id.* ¶¶ 14–17. Defendant responded by filing a counterclaim for breach of contract, seeking payment for unpaid invoices and interest in the amount of $47,514.71, plus additional interest accrued since the counterclaim was filed. Receipt of Original Case File, ECF No. 5, Super. Ct. Docs., ECF No. 5-1, at 11–14.

Now before the court are Defendant's Motion for Summary Judgment, Defendant's Motion in Limine, and Plaintiff's Motion to Add WTEF East as a Co-Plaintiff. Defendant moves for summary judgment on the grounds that: (1) Plaintiff lacks standing; (2) Plaintiff's claims are time barred; (3) Count II is barred by the economic loss rule; (4) Plaintiff waived recovery for consequential damages; and (5) the court should strike both Plaintiff's experts' testimony and the common law breach of duty claim that testimony supports. *See* Defs.' Mot. at 21–45. Separately, Defendant filed a Motion in Limine to strike the reports and opinion testimony of Plaintiff's two experts. Defs.' Mot. in Limine, ECF No. 48. In response to Defendant's Motion for Summary Judgment, Plaintiff moved to join WTEF East as a plaintiff. Pl.'s Mot.

### III. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A "genuine dispute" of a "material fact" exists when the fact is "capable of affecting the substantive outcome of the litigation" and "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Elzeneiny v. District of Columbia*, 125 F. Supp. 3d 18, 28 (D.D.C. 2015). In assessing a motion for summary judgment, the court looks at the facts in the light most favorable to the nonmoving party and draws all justifiable inferences in that party's

favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). To defeat a motion for summary judgment, the nonmoving party must put forward "more than mere unsupported allegations or denials"; its opposition must be "supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial" and that a reasonable jury could find in its favor. *Elzeneiny*, 125 F. Supp. 3d at 28; FED. R. CIV. P. 56(c)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

## IV. DISCUSSION

As standing is a threshold issue, the court first addresses that question. For the reasons that follow, the court finds that Plaintiff lacks standing and, therefore, does not consider Defendant's remaining grounds for summary judgment. The court then moves onto Plaintiff's Motion to add WTEF East as a Co-Plaintiff.

### A. Whether Plaintiff Has Standing

Defendant's argument that Plaintiff lacks standing is uncomplicated. Defendant contends that, by virtue of Plaintiff's assignment of "all of [its] right, title and interest" under the Architect Agreement to WTEF East, Plaintiff is no longer a party to the Architect Agreement. Defs.' Mot., Mem. in Supp., ECF No. 46-1 [hereinafter Defs.' Mem.], at 26. Instead, WTEF East and Defendant are the sole parties to the Architect Agreement and, as such, only WTEF East has standing to enforce the Agreement or to sue Defendant for breach of any common law duty arising therefrom. *Id.* Furthermore, Plaintiff, although related to WTEF East, is a separate and distinct legal entity that cannot sue on WTEF East's behalf. *Id.* at 22–23, 26–27. In short, Defendant contends that Plaintiff assigned away its standing to sue Defendant for claims arising from the Architect Agreement. *Id.* at 26–27.

The burden of invoking the court's subject matter jurisdiction, including establishing the elements of standing, lies with the plaintiff. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The plaintiff must demonstrate standing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Thus, while at the motion to dismiss stage, general factual allegations of injury at the hands of defendant may suffice to establish standing, at the summary judgment stage, the "plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts" that support standing. *Id.* (internal quotation marks omitted).

A plaintiff must satisfy both the requirements of Article III of the United States Constitution and the court-crafted doctrine of prudential standing for his suit to proceed. To satisfy Article III, a plaintiff must establish that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. ___, ___, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 560–61). In addition to these constitutional requirements, courts also must consider a set of prudential principles, which are judicially self-imposed limits on the exercise of federal jurisdiction. *See Bennett v. Spear*, 520 U.S. 154, 162 (1997). Such principles are rooted in the concern over "the proper—and properly limited—role of the courts in a democratic society." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Prudential standing, like Article III standing, is a threshold, jurisdictional issue.[3] *Deutsche Bank Nat. Tr. Co. v. FDIC*, 717 F.3d 189, 194 n.4 (D.C. Cir. 2013). Federal courts may consider prudential standing *before* Article III standing, and

---

[3] The Supreme Court recently noted that "[t]he limitations on third-party standing" could be considerations that go to the merits of an issue, rather than the court's jurisdiction. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. __, __,134 S. Ct. 1377, 1387 n.3 (2014). The *Lexmark* Court did not clarify the issue, however; therefore, this court remains bound by the D.C. Circuit's treatment of third-party standing as a threshold, jurisdictional issue. *See Steffan v. Perry*, 41 F.3d 677, 697 (D.C. Cir. 1994) (en banc); *see also In re Hope 7 Monroe St. Ltd. P'ship*, 743 F.3d 867, 871 (D.C. Cir. 2014).

accordingly, may hold that a party lacks prudential standing as an *alternative* to deciding whether the party has Article III standing. *Id.*; *see also Johnson v. Comm'n on Presidential Debates*, No. 16-7107, 2017 WL 3708097, at *4 (D.C. Cir. Aug. 29, 2017). The court takes that alternative route here.

Two prudential standing principles guide the court's analysis. First, under what is known as the "shareholder standing rule," a parent corporation cannot bring an action on behalf of its subsidiary. *See Franchise Tax Bd. of California v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336 (1990). "No shareholder—not even a sole shareholder—has standing in the usual case to bring suit in his individual capacity on a claim that belongs to the corporation." *Am. Airways Charters, Inc. v. Regan*, 746 F.2d 865, 873 n.14 (D.C. Cir. 1984).[4] Second, "a stranger to a contract may not sue to enforce its terms." *Flack v. Laster*, 417 A.2d 393, 399 n.11 (D.C. 1980). Generally speaking, only a party to an agreement can seek to hold a counterparty accountable for a breach of the agreement's terms.

In this case, Plaintiff's assertion of standing runs headlong into both of these prudential standing principles. First, the shareholder standing rule bars Plaintiff from bringing an action on behalf of its subsidiary, WTEF East, because each is a separate and distinct legal entity. Plaintiff is a District of Columbia nonprofit corporation, *see* Pl.'s Ex. 2 at 3, and WTEF East is a Delaware non-stock corporation. *Id.* at 3, 5. Although the two entities are related—Plaintiff is the sole member of WTEF East—each entity has its own board of directors and keeps its own books and

---

[4] Whether a parent corporation can sue on behalf of a subsidiary is a matter of state corporate law. *See Jones & Assocs., Inc. v. District of Columbia*, 797 F. Supp. 2d 129, 135 (D.D.C. 2011). As WTEF is incorporated under the laws of the District of Columbia, *see* Pl.'s Ex. 2; Defs.' Ex. L at 3, District of Columbia law applies, which recognizes the shareholder standing rule. *See Estate of Raleigh v. Mitchell*, 947 A.2d 464, 470 (D.C. 2008) ("Since the [plaintiff] estate had no legal interest in the real property belonging to the corporation, it could not sue individually to redress any alleged wrongs against the corporation's property interests."). Although WTEF is a nonprofit corporation, and the shareholder standing rule is typically applied in the for-profit context, the parties have cited no case, and the court is aware of none, that renders that rule inapplicable in the nonprofit context.

records. *Id.*; Pl.'s Stmt. ¶ 1. These corporate formalities must be respected. As a result, Plaintiff cannot assert claims on behalf of WTEF East; WTEF East must do so itself. Second, the general rule against allowing third parties to enforce contracts likewise operates to deny Plaintiff standing. In early 2012, Plaintiff assigned "all of [its] right, title and interest" in the Architect Agreement to WTEF East. Consequently, as of the effective date of that assignment, Plaintiff was no longer a party to that agreement. If Defendant breached the Architect Agreement, then only WTEF East, as the sole counterparty to that contract, can seek to enforce it. As a "stranger" to the agreement, Plaintiff cannot do so itself.

Plaintiff attempts to avoid this straightforward analysis in three ways, none of which are convincing. First, Plaintiff claims that "there is not a dime's worth of difference between WTEF and WTEF East" and therefore Plaintiff has standing to sue. Pl.'s Opp'n at 5. "Although WTEF East exists on paper, it has no employees and puts on no programs for the community[,]" and "WTEF East was nothing more than a financing tool for the New Market Tax Credits." Pl.'s Opp'n at 4; Pl.'s Reply in Supp. of Mot. to Add WTEF East as a Co-Plaintiff, ECF No. 55 [hereinafter Pl.'s Reply], at 2. Plaintiff also insists that the Assignment Agreement was "merely a formality." Pl.'s Opp'n at 5. Although Plaintiff would like to have its cake and eat it, too, the "noble function" of the shareholder standing rule is to prevent such guile. *Sec. Indus. & Fin. Mkts. Ass'n v. U.S. Commodity Futures Trading Comm'n*, 67 F. Supp. 3d 373, 406 (D.D.C. 2014).

> Where a parent corporation desires the legal benefits to be derived from organization of a subsidiary that will function separately and autonomously in the conduct of its own distinct business, the parent must accept the legal consequences, including its inability later to treat the subsidiary as its alter ego because of certain advantages that might thereby be gained.

*Id.* (quoting *In re Beck Indus., Inc.,* 479 F.2d 410, 418 (2d Cir. 1973)). Here, the establishment of WTEF East enabled Plaintiff to secure an additional $2 million in financing for the East Capitol

Campus. Pl.'s Mot. at 2 n.1; Defs.' Ex. L at 2. WTEF East owns the East Capitol Campus, holds it as an asset on its books and records, and leases the facility to its parent, Plaintiff. Pl.'s Stmt. ¶ 2; Pl.'s Opp'n, Ex. 10, ECF No. 50-10; Defs.' Ex. L at 2–3; Grand Dep. at 13–14, 18–19. Plaintiff cannot now ignore that deliberate corporate structuring, or "reverse pierce" the corporate veil, simply because it now works to its disadvantage. *See Flocco v. State Farm Mut. Auto. Ins. Co.*, 752 A.2d 147, 155 (D.C. 2000).

Next, Plaintiff insists that WTEF East's status as a supporting foundation to Plaintiff under the tax code confers standing to sue upon Plaintiff. Pl.'s Opp'n at 4, 6. Plaintiff, however, cites no authority for that novel proposition. WTEF East's mere designation as a supporting entity under the Internal Revenue Code cannot, absent express direction from Congress, alter settled principles of prudential standing. *Cf. Bennett*, 520 U.S. at 162 (noting that, unlike Article III's requirements, Congress can modify or abrogate a prudential standing principle). Thus, the mere fact that WTEF East is a supporting entity of Plaintiff does not confer standing upon Plaintiff.

Last, Plaintiff argues that it has standing to sue because it is a third-party beneficiary of the Architect Agreement, Pl.'s Reply at 5, but that argument is both untimely and meritless. First, it comes too late. Plaintiff did not assert its purported standing as a third-party beneficiary in either its Complaint or its Opposition to Defendant's Motion for Summary Judgment, but instead raised it for the first time in its Reply in Support of its Motion to Add WTEF East as a Co-Plaintiff. *See id.* Accordingly, Plaintiff waived any attempt to re-characterize itself as a third-party beneficiary. *See Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992). Second, even if the court were to consider the belated argument, Plaintiff does not come close to establishing third-party beneficiary status. A third party has standing to enforce a contract if the parties "directly and unequivocally intend to benefit [that] third-party." *Bowhead Info. Tech. Servs., LLC. v. Catapult*

*Tech. Ltd.*, 377 F. Supp. 2d 166, 171 (D.D.C. 2005) (internal quotation marks omitted). The agreement itself is the best evidence of the parties' intent. *See FiberLight, LLC v. Nat'l R.R. Passenger Corp.*, 81 F. Supp. 3d 93, 109 (D.D.C. 2015). Here, the Architect Agreement expressly disclaims any third-party beneficiary. Section 10.5 of the Agreement states: "Nothing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a *third party* against either the Owner [Plaintiff] or Architect." Architect Agreement (Art. 10, § 10.5) (emphasis added). Moreover, the Assignment Agreement does not identify Plaintiff as a third-party beneficiary to either the Architect Agreement or the Assignment Agreement itself. To the contrary, it actually names *Defendant* as the third-party beneficiary. Assignment Agreement at 1 ("Assignor [Plaintiff] and Assignee [WTEF East]. . . agree that the Architect [Defendant] is a third party beneficiary of this Assignment."). In short, having assigned away all of its rights under the Architect Agreement, Plaintiff has "no rights left to invoke" and no standing to sue. *See Neese v. Johanns*, 518 F.3d 215, 219 (4th Cir. 2008).

Accordingly, unless WTEF East can be added as a party at this juncture, this case comes to an end and Defendant will be entitled to entry of judgment in its favor.

### B. Plaintiff's Motion to Add WTEF East as a Co-Plaintiff

Plaintiff invokes three procedural mechanisms in an attempt to add WTEF East as a plaintiff: Rules 15, 21, and 24 of the Federal Rules of Civil Procedure. None of those rules allow WTEF East to join this lawsuit.

#### 1. Rule 15

Plaintiff first seeks to amend its complaint under Rule 15(a)(2) in order to add WTEF East as a co-plaintiff. *See* Pl.'s Mot. at 3–4. That Rule provides that a "court should freely give leave [to amend] when justice so requires," FED. R. CIV. P. 15(a)(2), and the Supreme Court has

instructed courts to apply that standard liberally, *see Foman v. Davis*, 371 U.S. 178, 182 (1962). Even under Rule 15's generous standard, however, a court cannot grant leave to amend a complaint over which it has no jurisdiction. *See Lans v. Gateway 2000*, 84 F. Supp. 2d 112, 116–17 (D.D.C. 1999), *aff'd*, 252 F.3d 1320 (Fed. Cir. 2001). As the court in *Lans* put it: "[I]f a plaintiff lacks standing . . . [at] the time of the filing of the original complaint, there is no action for him to amend, since the court is deprived of subject matter jurisdiction over the entire matter." *Id.*; *accord Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assur. Co.*, 700 F.2d 889, 893 (2d Cir. 1983) ("The longstanding and clear rule is that if jurisdiction is lacking at the commencement of [a] suit, it cannot be aided by the intervention of a [plaintiff] with a sufficient claim." (internal quotation marks omitted)); *Summit Office Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1279–82 (5th Cir. 1981) (holding that "where a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs, a new class, and a new cause of action"). Thus, when subject matter jurisdiction is wanting because the plaintiff presently named in the complaint lacks standing, a court cannot grant leave to amend under Rule 15 to add a plaintiff for purposes of curing the jurisdictional defect.

The facts of *Lans* illustrate why Plaintiff cannot rely on Rule 15 to add WTEF East as a co-plaintiff here. In *Lans*, the plaintiff at one time owned a patent related to computer color graphics technology, but assigned "all [his] right, title, and interest" in the patent to a Swedish corporation, of which he was the sole shareholder. 84 F. Supp. 2d at 113 & n.2. The plaintiff subsequently filed suit against a technology company for patent infringement, but the court concluded he lacked standing because he did not own the patent. *Id.* at 123. Furthermore, the court denied the plaintiff leave to amend under Rule 15 on the ground that he could not use Rule

15 to retroactively create jurisdiction by adding a party. *Id.* at 115–17. Like the plaintiff in *Lans*, Plaintiff here assigned all "right, title, and interest in the Architect Agreement" to WTEF East before filing suit, *see* Assignment Agreement at 1, and, in so doing, terminated its right to enforce the terms of the Architect Agreement or bring any related common law claims. Without standing, Plaintiff "has no case left to assert" and, therefore, has no complaint to amend under Rule 15(a). *Lans*, 84 F. Supp. 2d at 117.

In short, Plaintiff cannot manufacture this court's subject matter jurisdiction through Rule 15(a)(2). The court, therefore, denies leave to amend under that Rule.

### 2. *Rule 21*

Plaintiff next seeks to add WTEF East as a party under Rule 21. Pl.'s Mot. at 4–5. Rule 21 provides that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." FED. R. CIV. P. 21. The standard for adding or dropping a party under Rule 15(a) also applies to Rule 21. 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §§ 1474, 1479 (3d ed. 2008); *see also Wiggins v. Dist. Cablevision, Inc.*, 853 F. Supp. 484, 499 n.29 (D.D.C. 1994). Accordingly, the same jurisdictional limitation on motions under Rule 15 applies to motions under Rule 21—if the plaintiff lacks standing at the start of the action, then the court does not have the authority to add a party under Rule 21 to cure that jurisdictional defect. *See Salazar v. Allstate Texas Lloyd's, Inc.*, 455 F.3d 571, 575 (5th Cir. 2006); *N. Trust Co. v. Bunge Corp.*, 899 F.2d 591, 597 (7th Cir. 1990); *Field v. Volkswagenwerk AG*, 626 F.2d 293, 306 (3rd Cir. 1980). Thus, like Rule 15, Rule 21 offers no lifeline to Plaintiff.

### 3. *Rule 24*

Finally, Plaintiff asks the court to allow WTEF East intervene under Rule 24. Pl.'s Mot. at 5. Rule 24 enables a non-party to intervene in ongoing litigation either as a matter of right or

with the court's permission. In this case, Plaintiff asks the court to allow WTEF East to permissively intervene. There is, however, one glaring problem with that request: Plaintiff cannot move to intervene on WTEF East's behalf; WTEF East must do so itself. Rule 24 states that the court may permit someone to intervene "[o]n timely motion," FED. R. CIV. P. 24, and such motion "must be made by the person seeking to intervene," 7C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1914 (3d ed. 2015). Consequently, because WTEF East itself has not moved to intervene, Rule 24 provides Plaintiff no refuge.

## V. CONCLUSION AND ORDER

For the foregoing reasons, the court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion to Add WTEF East as a Co-Plaintiff. In light of the court's ruling, the court denies as moot Defendant's Motion in Limine to exclude Plaintiff's experts' testimony, ECF No. 48, as well as Defendant's Motion to Strike Plaintiff's Notice of Supplemental Authority, ECF No. 57.

The court maintains jurisdiction over Defendant's pending counterclaim, and the case will proceed on that claim alone.

Dated: September 13, 2017

Amit P. Mehta
United States District Judge